IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

GREEN RUSH, LLC, d/b/a XHALE CITY                                      PLAINTIFF

VS.                                          CIVIL ACTION NO. 2:23-cv-71-KS-MTP

XHALE  TOBACCO  &  HOOKAH,  INC.,
ET AL.                                                                 DEFENDANTS

## **ORDER**

Before the Court are motions filed by the parties, as follows: (1) a Motion for Summary

Judgment [54] filed by Plaintiff Green Rush, LLC, d/b/a Xhale City ("Green Rush"), and (2) a

Motion for Summary Judgment [56] filed by Defendants Xhale Tobacco & Hookah, Inc., X Hale

Smoke Shop #3, Xhale Smoke 5, Inc., Xhale Smoke Shop 5, Inc., Xhale Smoke Shop 6 Inc., Xhale

Smoke Shop Inc., and Moosa Hadwan (collectively, "Xhale Smoke Shop Defendants"). These

motions are fully briefed.  For the reasons explained below, the Court finds that both Motions [54]

and [56] should be denied.

### I.      BACKGROUND AND CLAIMS

As a part of a nationwide campaign to enforce its registered trademark "XHALE CITY,"[1]

Plaintiff Green Rush[2] brings this action against the Xhale Smoke Shop Defendants alleging federal

and state claims of trademark infringement, unfair competition, and unjust enrichment.[3]  Xhale

City opened its doors in August 2014 with four stores around Atlanta, Georgia, selling a selection

of tobacco and vaping products.  [1] at 1; [54-4] at 13-14.  Green Rush's Hattiesburg store also

---

[1] *See* "Policing Letters" at [54-7] and [54-8].  Green Rush sent cease and desist letters to Defendants Moosa Hadwan and Xhale Tobacco & Hookah, Inc. on March 30, April 27, and May 6, 2022.  *See* [54-7] at 20, 27, 49.
[2] Green Rush is owned by brothers Aleem Wadhwania and Nuruddin Wadhwania, with the ownership interest split between them at the rates of 60% (Mr. A. Wadhwania) and 40% (Mr. N. Wadhwania).  [54-1] at 4; [54-4] at 10.
[3] According to Defendant Moosa Hadwan, he is one-third owner of each of the Defendant entities.  [54-13] at 6.  Non-parties possess the remaining portions of the entities' ownerships.

sells THC products, pipes, and bongs.  [56-1] at 15:6-10; [56-5] at 23:3-5.  Through franchising and licensing agreements, the chain has expanded nationally to sixty-one[4] stores, with twenty-one stores in development.  [54-3] at 3.

Green Rush asserts that its client base includes adults over the age of 21, who mostly vape or smoke.  Depo. [54-2] at 41.  Green Rush uses various methods of advertising to reach its customers, including radio ads, social media, flags positioned outside of stores, billboards, text campaigns, and festival sponsorships.  *Id.* at 36; [54-4] at 45-50.  According to Green Rush, it spent approximately $2.5 million on advertising in support of its stores in 2023.  [54-3] at 3.

Green Rush attained its trademark registration of "XHALE CITY" with the United States Patent and Trademark Office ("USPTO") on September 13, 2016.  [54-6] at 2.  The registration states that "the mark consists of standard characters without claim to any particular font style, size or color."  *Id.*  On March 18, 2022, Xhale City opened a location at 6062 Highway 98 (a/k/a Hardy Street), Hattiesburg, Mississippi.  [1] at 1, 5; [54-2] at 5.  And as of August 17, 2022, the USPTO issued a "declaration of incontestability," finding that the mark "XHALE CITY" met the requirements of 15 U.S.C. § 1065.[5]

---

[4] The number of stores Plaintiff has in operation appears to be a moving target.  As of January 30, 2024, Plaintiff's counsel represented in a cease-and-desist letter that Xhale City has "28 locations throughout the country."  [56-3] at 40.

[5] The relevant portion of the statute provides:

> the right of the owner to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: *Provided*, That –
>
> (1) there has been no final decision adverse to the owner's claim of ownership of such mark for such goods or services, or to the owner's right to register the same or to keep the same on the register; and
>
> (2) there is no proceeding involving said rights pending in the United States Patent and Trademark Office or in a court and not finally disposed of; and
>
> (3) an affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in commerce, and other matters specified in paragraphs (1) and (2) hereof; and
>
> (4) no incontestable right shall be acquired in a mark which is the generic name for the goods or

Prior to that, in the fall of 2020, Xhale Smoke Shop Defendants opened their first location at 4400 Hardy Street, Suite B8, in Hattiesburg, Mississippi.  [14] at 10; [54-7] at 20; [54-12] at 11. Since that time, Xhale Smoke Shop Defendants have opened five other Xhale Smoke Shop stores in the towns of Columbia, Seminary, Ellisville, Sumrall, and Prentiss, Mississippi, all within a forty-mile radius of Hattiesburg.[6]  These stores developed from an existing network of gas stations and other businesses Defendants' owners have operated for over twenty years in towns surrounding Hattiesburg.  [63-3] at 5:1-18.  According to Defendant Moosa Hadwan, he came up with the name "Xhale Smoke Shop," and his business partners approved it.  [54-11] at 12:9-19. Hadwan assumed that the State would not have issued their operating license if the name had already been taken.  *Id.* at 14.

The Xhale Smoke Shop Defendants sell smoking related products, including cigarettes, chewing tobacco, vapes, tobacco-related items, cigars, water pipes, and hookahs to customers of varying ages over 21.  [54-11] at 17.  In 2022, Xhale Smoke Shop Defendants spent $1,764.99 on two radio ads.  *Id.* at 28.  It has used Facebook, Instagram, and loyalty punch cards to promote its businesses.  *Id.* at 20-21.

Green Rush filed this action in May 2023, over one year after opening its Hattiesburg location.  [1] at 1.  It alleges several claims against Defendants, as follows: (1) federal trademark infringement under 15 U.S.C. § 1114(1); (2) federal unfair competition under 15 U.S.C. § 1125(a); (3) common trademark infringement under Miss. Code Ann. § 75-25-23; and (4) common law unjust enrichment.  Green Rush asks the Court to permanently restrain and enjoin Defendants from

---

services or a portion thereof, for which it is registered.

15 U.S.C. § 1065 (2021)(emphasis in original).

[6] Xhale Smoke Shop Inc. opened in Columbia on June 8, 2021.  [54-12] at 11.  Xhale Smoke Shop #3, Inc., opened in Seminary on March 14, 2022.  *Id.*  Xhale Smoke Shop 5, Inc., opened in Ellisville on December 28, 2022.  *Id.*  Exhale Smoke Shop 6, Inc., opened in Sumrall on March 23, 2023.  *Id.*  Xhale Smoke 5 Inc. opened in Prentiss on April 26, 2023.  *Id.*

using its mark in relation to its business and using the term "XHALE" in relation to "marks or any other copy, derivation, reproduction, colorable imitation, or simulation of Xhale City's mark." *Id.* at 15.  Plaintiff also seeks various forms of damages, including all profits derived from sales associated with the use of the term "XHALE," treble damages, attorneys' fees and costs, as well as punitive damages.  *Id.* at 16-17.

Defendants have answered the complaint with general denials and urged the following affirmative defenses:  laches; failure to mitigate damages; waiver or acquiescence; failure to state a claim upon which relief can be granted; no likelihood of confusion; and that their use of "XHALE" pre-dates Green Rush's use of "Xhale City" in Mississippi.  [14] at 1-2.  According to their Response [64] to the motion for summary judgment, Defendants are no longer pursuing their cancellation counterclaims.  [64] at 1.

## II.   STANDARD

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs.*, *L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).  The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

At this juncture, the Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom

4

in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138.  If the moving party meets its initial burden, the nonmoving party who will have the burden of proof at trial must go beyond the pleadings and come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  The nonmovant's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Stout v. Vincent*, 717 Fed. App'x 468, 470–71 (5th Cir. 2018) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)).  In addition, "speculation, improbable inferences, . . . and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

III.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

A.  Trademark Infringement (Count One)

"A prima facie trademark infringement case is made out by proof of two elements:  that the plaintiff owns a legally protected mark, and there is a likelihood of confusion between [its] mark and the defendant's mark." *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 294 (5th Cir. 2015).  Plaintiff Green Rush argues that it has a strong, suggestive trademark, and that its federal trademark registration for "XHALE CITY" grants nationwide priority to the mark and presumptively valid trademark rights.  [55] at 1, 15.  Green Rush asserts that its trademark is "registered and incontestable." *Id.* at 15.  Moreover, Green Rush argues that the close proximities, identical services, same customer base, and same marketing channels of its XHALE CITY store and the Xhale Smoke Shop Defendants' stores have resulted in "rampant actual confusion." *Id.* at 1.

Xhale Smoke Shop Defendants admit that the federal registration of "XHALE CITY" constitutes prima facie evidence of Green Rush's exclusive rights to use "XHALE CITY" in connection with the services identified therein.  [14] at 5.  However, Defendants counter that while Green Rush possesses the exclusive right to use the term "XHALE CITY" for providing vape store services, it does not have the exclusive right to the words "Xhale" or "City."  [64] at 1.  What is more, Defendants argue that the term "XHALE CITY" is a weak, suggestive trademark, as Green Rush itself has identified thirty-two competitors using "xhale" in their trade names and admits that three competitors have superior trademark rights.  *Id.* at 3.  Defendants point to years of concurrent use and argue that Green Rush cannot point to any actionable actual consumer confusion.  *Id.*

Even accepting as true for summary judgment purposes that Plaintiff owns a legally protected mark, the Court is of the opinion that genuine issues of material fact remain regarding the likelihood of confusion between the marks.  "'Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion.'"  *Board of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008)(citation omitted).  "[L]ikelihood of confusion is a matter of comparing one mark's recognition factor with that of another."  *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 377 (7th Cir. 1976).

To assess the likelihood of confusion, the Court considers the following non-exhaustive list of factors:

> [the] so-called "digits of confusion," including (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.  Courts also consider (8) the degree of actual care exercised by potential purchaser.  No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors.

*Smack Apparel*, 550 F.3d at 478.

"In this Circuit, the likelihood of confusion is a fact issue that, except in rare circumstances, should not be determined on" summary judgment. *See Neles-Jamesbury, Inc. v. Valve Dynamics, Inc.*, 974 F. Supp. 964, 971 (S.D. Tex 1997). Indeed, each of the individual factors or "digits of confusion" making up the likelihood of confusion test are also questions of fact. *Union Nat'l Bank of Texas v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 846 (5th Cir. 1990). And while "summary judgment may be appropriate in a trademark case, just as in any other case[, t]here are cases within the Fifth Circuit . . . which strongly caution against granting summary judgment on the fact-intensive issue of the likelihood of confusion." *See New Century Fin. Corp.*, No. C-04-437, 2005 WL 2453204, at *2 (S.D. Tex. Oct. 4, 2005)(collecting cases)(citations omitted). To be sure, cases from within and without the Fifth Circuit "reflect a rule that summary judgment on the issue of the 'likelihood of confusion' should, at the very least, be approached with the utmost caution." *Id.* (collecting cases).

Accordingly, the Court turns to the "digits of confusion" factors.

i.    <u>The type of mark allegedly infringed</u>

The first factor in the likelihood of confusion analysis is the type of mark, which is also referenced as the "strength of the mark." *See Viacom Int'l, Inc. v. IJR Cap. Invs., LLC*, 891 F.3d 178, 193 (5th Cir. 2018). "The more distinctive a mark, the stronger the mark." *Id.* "Strong marks are entitled to more protection because there is a greater likelihood 'that consumers will confuse the junior user's use with that of the senior user.'" *Id.* The Court analyzes two factors in determining the strength of the mark: (1) the mark's position along the distinctiveness spectrum,[7]

---

[7] The distinctiveness spectrum consists of the five categories of increasing distinctiveness into which marks generally fall, from weak to strong, as follows: generic, descriptive, suggestive, arbitrary, and fanciful. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

and (2) 'the standing of the mark in the marketplace.'" *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 814 (5th Cir. 2019)(quoting *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008)).

In this case, the parties agree that the mark "XHALE CITY" is suggestive, but the parties disagree, and genuine issues of material fact exist, regarding its strength.  On the distinctiveness spectrum, suggestive marks are "comparatively weak." *Future Proof Brands*, 982 F.3d at 292.  "A *suggestive* term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services." *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir. 1983); *see also Xtreme Lashes*, 576 F.3d at 227.  On the other hand, "[a]rbitrary and fanciful marks have no relation to the product or service" and are viewed as stronger marks.  *Springboards*, 912 F.3d at 814.

Green Rush argues, *inter alia*, that its mark "XHALE CITY" is strong because it is registered and incontestable pursuant to 15 U.S.C. § 1065, therefore it carries a presumption of distinctiveness.  It is well-established that "[r]egistration of a mark with the [USPTO] constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services."  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010).   However, the achievement of "incontestability" pursuant to § 1065 "simply obviates any need for [the trademark holder] to prove the existence of secondary meaning for its mark to seek enforcement against a claimed infringer— it does not at all equate to establishing the mark's status as valid in terms of its enforceability against the world . . . ." *Singh v. V. Patel & Sons, Inc.*, 851 F. Supp. 318, 320 (N.D. Ill. 1994) (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985)).  Put another way,

"'the presumption of validity that attaches to a service mark is not relevant to the issue of infringement.'" *Future Proof Brands, L.L.C. v. Molson Coors Bev. Co.*, 982 F.3d 280, 293 (quoting *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981)). "For an infringement claim, we examine the strength of the mark, not its distinctiveness or validity." *Id.* at 293.

Thus, the Court turns to consider the mark's standing in the marketplace. *Id.*  Although "XHALE CITY" has been registered, the mark is still subject to the defenses enumerated in 15 U.S.C. § 1115(b).[8]  Among those defenses is the "'fair use' defense, [which,] in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Soweco*, 617 F.2d at 1185.  "The holder of a protectable descriptive mark has no legal claim to an exclusive right in the primary, descriptive meaning of the term; consequently, anyone is free to use the term in its primary, descriptive sense so long as such use does not lead to customer confusion as to the source of the goods or services." *Zatarains*, 698 F.2d at 791.  "'Third-party uses,' as they are called, are relevant in determining the strength of the mark because they tend to show that the mark has been diluted in the marketplace." *New Century Fin. Corp.*, 2005 WL 2453204, at \*3.  Moreover, "[w]hen a mark is diluted, it becomes a less effective vehicle for signifying the exact origin of products or services.  Therefore, a defendant's use of a diluted mark is less likely to cause confusion among the consuming public."

---

[8] The defenses set forth to incontestability include (1) that "the registration or the incontestable right to use the mark was obtained fraudulently;" or (2) the registrant has abandoned the mark; or (3) the mark is "being used by or with the permission of the registrant[;]" or (4) a good faith defense that includes, *inter alia*, use of one's own name or the geographic origin of the goods; a descriptive term or device used fairly and in good faith to describe the goods or services of the party, or their geographic origin; or (5) the mark "was adopted without knowledge of the registrant's prior use and has been continuously used by such party . . from a date prior to (A) the date of constructive use of the mark . . ., (B) registration of the mark . . ., or (C) publication of the registered mark . . ., [*p*]*rovided, however*, this defense . . . shall apply only for the area in which such continuous prior use is proved; or (6) prior registration and use of the allegedly infringing mark without abandonment; or (7) use of the mark in violation of antitrust laws; or (8) "the mark is functional; or" (9) "[t]hat equitable principles, including laches, estoppel, and acquiescence, are applicable." 15 U.S.C. § 1115(2002).

*Id.*

Xhale Smoke Shop Defendants argue that Green Rush is not just attempting to protect its actual mark of "XHALE CITY," but it is also attempting to take over the entire use of the descriptive word "Xhale," which is prevalent in the vape and smoke industry. Indeed, Xhale Smoke Shop Defendants point out that Green Rush has identified over thirty competitors across the United States that use the word "xhale" in their trade names, and even more that use the term "exhale." *See* [56-3]. As a part of its answer, Defendants included names, addresses, and pictures of seventeen similar smoke and vape businesses across the United States that use "xhale" as a part of their names. *See* [14-2]. Defendants also observe that when Green Rush adopted the "XHALE CITY" mark, there were numerous other vape shops using the word "exhale" as a part of their trade names. Defendants further argue that Green Rush is currently negotiating to purchase common law trademark rights from three companies that currently use the word "xhale" in their names, and which Green Rush admits have senior trademark rights. *See* [56-4].

Defendants have presented evidence, including that found in Plaintiff's trademark enforcement campaign, of extensive third-party uses of the term "xhale" in the vape and smoke industry. Accordingly, this tends to show that the mark is weak and suffers from dilution. Moreover, Green Rush's attempt to deny the use of the term "xhale" to others, rather than to just its mark "XHALE CITY" runs counter to foundational trademark law: "[t]he commercial impression of trade-mark is derived from it *as a whole*, not from its elements separated and considered in detail. For this reason it should be considered in its entirety." *Estate of P.D. Beckwith v. Commissioner of Patents*, 252 U.S. 538 (1919).

Considering this evidence, the Court finds that genuine issues of material fact exist on the issue of the strength of the mark, thereby precluding summary judgment.

10

ii.    The similarity between the two marks

This factor "requires consideration of the marks' appearance, sound, and meaning."
*Viacom Int'l*, 891 F.3d at 193 (citations omitted).  "'Even if two marks are distinguishable, we ask
whether, under the circumstances of use, the marks are similar enough that a reasonable person
could believe the two products have a common origin or association.'" *Id.* (quoting *Xtreme Lashes*,
576 F.3d at 278).  "A mark must be viewed in its entirety and in context.  It is the overall impression
that counts."  *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502 (5th Cir.
1979)(finding that the "mere fact" that defendant and plaintiff shared one word in their corporate
names – "world" -- did not, "of itself, make the name 'substantially similar' to [plaintiff's]
trademark.")

Again, the Court finds that this is a question of material fact best decided by a jury.  The
trademark registration of "XHALE CITY" states that "the mark consists of standard characters
without claim to any particular font style, size or color."  [54-6] at 2.  While Plaintiff has included
a Google review of its 6062 US-98/ Hardy Street, Hattiesburg location, *see* [54-16] at 2, the Court's
examination of the complaint and nearly 800 pages of record submitted in support of Plaintiff's
motion for summary judgment does not reveal a picture of Plaintiff's mark.  *See* [54].  Based on a
September 2022 picture of Plaintiff's mark found by the Court online on Google maps, the mark
on the Hattiesburg store's signage consists of slanted capital letters, with "XHALE" in red, and
"CITY" in white, all on a black background, with the words "SMOKE," "VAPE," and "CBD" in
smaller white capital letters centered and positioned under "XHALE CITY."[9]  *See* GOOGLE

---

[9] Under FED. R. EVID. 201(b)(2), courts "may judicially notice a fact that is not subject to reasonable dispute because
it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."
Moreover, judicial notice may be taken at any stage of the proceeding. FED. R. EVID. 201(f); *see also U.S. v. Perea-Rey*, 680 F.3d 1179, 1182 (9th Cir. 2012) (taking judicial notice of a Google map); *Pahls v. Thomas*, 718 F.3d 1210,
n.1 (10th Cir. 2013) (taking judicial notice of a Google map as a source whose accuracy cannot reasonably be
questioned).

MAPS, *https://www.google.com/maps* (last visited Sept. 26, 2024).  Xhale City's home internet

web page displays "XHALE CITY®" in slanted, all red capital letters.  https://www.xhalecity.com

(last visited Sept. 26, 2024).

Xhale Smoke Shop Defendants have used inconsistent branding across their stores.  In its

original 4400 Hardy Street, Hattiesburg location, "Xhale Smoke Shop" has been presented in

illuminated signage and on the internet with a red "X" displayed prominently, twice the size of

"HALE," which appears in yellow capital letters, both sitting atop a slightly smaller "SMOKE

SHOP" in all red capital letters, with the image of a black or white-colored hookah centered behind

the design, extending upward and perpendicular to "HALE" and beyond the height of the red "X".

[1-3] at 3; [65-16] at 3-4.  At its Seminary location, Xhale Smoke Shop has used a similarly-styled

logo printed on material covering the front window of the store.  [1] at 10; [1-7] at 2.  However, at

its Ellisville location, Xhale Smoke Shop's rectangular sign placed at the roofline consists of the

words "X" and "HALE" in all white capital letters placed over smaller sized capital letters

"SMOKE SHOP," with all words outlined in black on a green background.  [1] at 10; [1-8] at 2.

The image of a brown smoking cigarette separates the "X" and "HALE" and is tilted toward the

"H," placed on the diagonal at approximately 45 degrees. *Id.*  Plaintiff does not appear to include

pictures of the Sumrall, Columbia, and Prentiss locations of Xhale Smoke Shop in its filings. While

the Xhale Smoke Shop appears to have a Facebook page, *see* [54-16] at 4, it is unknown whether

it has an official internet website.

As the foregoing discussion of logos and signage demonstrates, there are some

commonalities between the fonts, colors, and relative positioning of words between the parties'

branding.  However, "[u]ltimately, '[a] jury might well conclude that the marks are too dissimilar

to justify a finding of infringement.'"  *Xtreme Lashes*, 576 F.3d at 229 (citations omitted).  In

reversing a grant of summary judgment, the Fifth Circuit has held that it could be "improper for the district judge to weigh these similarities and differences instead of the jury." *Id.* (citations omitted). Accordingly, summary judgment is not appropriate.

### iii.   The similarity of the products and services

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Id.* "The proper focus of this inquiry is on 'whether the products and services of [plaintiff] and the Defendants are similar enough to cause confusion as to source or affiliation.'" *Brennan's, Inc. v. Brennan*, Civil Action No. 2:06cv694-TSL-JCS, 512 F. Supp. 2d 559, 568 (S.D. Miss. 2007)(quoting *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1998)). Both Plaintiff and Defendants occupy a niche market and sell products related to tobacco and vaping. Even so, the Court finds that the jury is best-suited to determine whether this factor weighs in favor of the likelihood of confusion.

### iv.   The identity of the retail outlets and purchasers

The fourth digit is the identity of retail outlets and purchasers. "The greater the overlap between retail outlets and purchasers, the greater the likelihood of confusion." *Viacom Int'l*, 891 F.3d at 194. Plaintiff argues that the parties have an identical customer base, therefore this digit weighs in favor of Green Rush. Defendants argue, however, that Green Rush asserts that its stores are designed to appeal to a more upscale customer, while Xhale Smoke Shop customers are more likely to be interested in tobacco products.

Xhale Smoke Shop Defendants also point out that when it adopted its mark, Plaintiff had no brick-and-mortar stores in Mississippi, thus there could not have been any overlap in customers. Moreover, because Green Rush has no brick-and-mortar locations in Columbia, Seminary, Ellisville, and Sumrall, the chance of overlap in customers with Defendants' stores in those

locations appears slim, even though Plaintiff's cites one alleged instance of overlap.  *See* [54-2] at 61-62.

"While the district courts often act as fact-finders in trademark cases, a court cannot 'jump the gun' and take over that role on summary judgment where the non-movant is supposed to enjoy significant procedural protections."  *New Century Financial, Inc. v. New Century Financial Corp.*, No. C-04-437, 2005 WL 2453204, at *7 (S.D. Tex. Oct. 4, 2005).  With this guidance in mind, the Court finds that genuine issues of material fact preclude a grant of summary judgment on this factor.

   v.  <u>The identity of the advertising media used</u>

"[T]he greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion."  *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 827 (S.D. Tex. 1999).  Plaintiff asserts that both parties advertise on social media, on the radio, and by using flags at their store locations, and, therefore, this digit weighs in its favor.

Construing the facts in the light most favorable to the non-moving party, Defendants' elaboration of these facts tends to show that there is little overlap.  According to Green Rush, it spent approximately $2.5 million on advertising in support of its stores in 2023.  [54-3] at 3. Defendants point out that Plaintiff admits that almost 100% of its advertising money was spent in Georgia, with the exception of one billboard directly across the street from its store in Hattiesburg.

On the other hand, Defendants maintain that they essentially do not engage in advertising. Although they spent a total of $1,764.99 on two radio ads in 2022, they characterized the two ads as public service announcements.  [54-11] at 28.  Defendants also assert that the flags that they use outside the stores are generic, without the contested mark, therefore the use of flags is irrelevant.

And while both parties use social media, Plaintiff's efforts are aimed primarily at existing customers.

Considering the relative disparity in the parties' advertising budgets and avenues of marketing, the Court finds that this digit is best evaluated by a jury.  Accordingly, it declines to grant summary judgment at this juncture.

vi.    The Defendants' intent

Green Rush argues that Defendants adopted the mark under constructive knowledge of Green Rush's trademark registration and even expanded after it had actual knowledge of those rights.  Indeed, Defendants continued with their expansions in towns surrounding Hattiesburg after receiving Plaintiff's cease and desist letters in the spring of 2022.  *See supra* nn. 1 & 3.  Plaintiff argues that Defendants took these steps at their peril, even if they had no intent to infringe.  Xhale Smoke Shop Defendants counter they had no bad intent in adopting the name, and that the Fifth Circuit has found that constructive notice of a mark is not evidence of bad intent.

"In some situations, the defendant's use of the mark with 'knowledge' of the senior user's mark 'may give rise to a presumption that the defendant intended to cause public confusion.'  But 'mere awareness' of the senior user's mark does not 'establish[ ] . . . bad intent.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455-456 (5th Cir. 2017)(citations omitted).  Considering the evidence, the Court finds that genuine issues of material fact exist on this issue.  The question of whether Defendants had an intent to confuse is a matter best left to the jury to decide.  Accordingly, summary judgment is denied on this issue.

vii.    Any evidence of actual confusion

The Court now turns to the next "digit of confusion," evidence of actual confusion.  "Actual confusion need not be proven, but if consumers have confused the junior mark for the senior mark,

this is 'the best evidence of a likelihood of confusion.'" *Xtreme Lashes*, 576 F.3d at 229. "A plaintiff may show actual confusion using anecdotal instances of consumer confusion, systemic consumer surveys, or both." *Streamline Prod. Sys., Inc.*, 851 F.3d at 457. "Even if the anecdotes are minor and isolated, 'courts may not ignore competent evidence of actual confusion.'" *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 230). However, """relevant confusion is confusion which affects "the purchasing and selling of goods or services in question.""" *Brennan's, Inc.*, 512 F. Supp. 2d at 571 (citations omitted). Moreover, "anecdotal evidence of confusion can be relevant only where there is competent evidence to connect the cited instances to some representation by Defendants." *Id.* "To prove infringement, [plaintiff] must ultimately prove that a misleading representation by [defendants], as opposed to some other source, caused a likelihood of confusion." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 487 (5th Cir. 2004). However, mere distraction – as opposed to confusion – is insufficient to establish confusion. *Jim S. Adler, P.C. v. McNeil Consultants L.L.C.*, 10 F.4th 422, 428 (5th Cir. 2021)(discussing initial interest confusion in the context of internet searches and search-engine advertising).

In this case, Green Rush has not offered survey evidence. Instead, it has undertaken to show actual confusion through anecdotal evidence offered by its store manager about customers who mistook XHALE CITY for Xhale Smoke Shop, as well as a phone call received by one of the co-owners of Defendant Xhale Smoke Shops, Mohammed Hadwan. In his deposition, XHALE CITY's store manager testified that two customers signed statements stating that they had confused the two stores, and he testified regarding "a handful," or "five" misdirected phone calls over a period of six months. [54-2] at 50-52, 56-65. Defendants argue that this is not competent summary judgment evidence. Even considering this evidence spanning a relatively short period, the Fifth Circuit has held that minimal instances of consumer confusion do not provide evidence of actual

confusion.  *See Amstar v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.1980)(two verbal inquiries and one misaddressed letter were considered "minimal" evidence of actual confusion and "insufficient to sustain a finding of likelihood of confusion"); *see also Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 448-449 (5th Cir. 1973)(finding that nine customers' letters regarding confusion between hotel and campground presented by hotel vice president "was of insufficient probative value to rise to the level of showing actual confusion by a similarity in the marks.").

Plaintiff next argues that "a couple calls" that Defendants' co-owner Mohammed Hadwan received is evidence of actual confusion.  [54-10] at 24:16-17.  In his deposition, Hadwan testified he received a couple phone calls from "friend of mine" asking whether Hadwan was opening another store because the friend or friends saw Hadwan's store "sign go up." [54-10] at 24:16-17. Instead of Hadwan's store sign, the sign belonged to "XHALE CITY."  *Id.*

Defendants argue that "[c]ourts have recognized that actual confusion evidence from friends and family does not accurately represent the consuming public."  *See, e.g., Fuel Clothing Co., Inc. v. Nike, Inc.*, 7 F. Supp. 3d 594, 622 (D.S.C. 2014).  Plaintiff points out that in those cases the "confused" person had the relationship with the plaintiff, not the defendant, therefore the courts found that those instances of confusion may not have been trustworthy.  Even so, it is well established that "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." RESTATEMENT (THIRD) OF UNFAIR COMPETITION (1995) § 20 reporter's note at 221.  Accordingly, the Court does not find this example sufficient to establish actual confusion.

Plaintiff has put forward only "minimal" instances of confusion – a "handful" of misdirected phone calls and customer visits, two customer statements of questionable evidentiary

pedigree, and phone calls to a co-owner of Defendants about Plaintiff's sign– and absolutely no survey evidence. "[I]solated instances of confusion about the affiliation of two companies that do not result in redirected business are not enough to sustain a finding of actual confusion. Additionally, proof of actual confusion not involving swayed customer purchases should be weighed against the parties' total volume of sales." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 625 (5th Cir. 2023). Considering this guidance, and in an abundance of caution, the Court concludes that Plaintiff's evidence is "insufficient to sustain a finding of likelihood of confusion." Accordingly, at this juncture, summary judgment on this issue is denied.

viii.    The degree of actual care exercised by potential purchaser

The final factor that the Court must consider when analyzing likelihood of confusion is the level of care exercised by potential purchasers in the parties' markets. In its Motion for Summary Judgment, Green Rush did not address this digit. Instead, in its Reply [70], it asserts that it makes it arguments on this point in its response to Xhale Smoke Shop Defendants' Motion for Summary Judgment. *See* [70] at 12 (referencing [62] at 29).

Even when chasing down Plaintiff's arguments, the Court concludes the "record is devoid of any evidence supporting a conclusion that consumers are unlikely to exercise care." *Buzzballz, LLC. v. JEM Beverage Co., LLC*, No. 3:15-cv-588-L, 2015 WL 3948757, *6 (N.D. Tex. June 26, 2015). Although courts have held "[w]here items are relatively inexpensive, a buyer *may* take less care in selecting the item, thereby increasing the risk of confusion," that is not a given. *Xtreme Lashes,* 576 F.3d at 231 (emphasis added). Because Plaintiff has failed to properly support its motion on this point with any evidence, summary judgment on this digit of confusion is denied.

In sum, because there are genuine issues of material fact that are best decided by a jury, or Plaintiff has failed to present evidence on a digit of confusion, the Court finds that summary

judgment on count one of Plaintiff's complaint, trademark infringement, should be denied.

B. LANHAM ACT UNFAIR COMPETITION and MISSISSIPPI TRADEMARK INFRINGEMENT

Plaintiff argues that because there is no question of fact as to its claim of trademark infringement under 15 U.S.C. § 1114, it necessarily follows that it is entitled to summary judgment on its claim of unfair competition under 15 U.S.C. § 1125(a) and trademark infringement under Mississippi common law.[10]   Because the Court has found that genuine issues of material fact preclude summary judgment on Plaintiff's trademark infringement claim, it follows that Plaintiff's motion for summary judgment on its unfair competition and state trademark claims should also be denied.  *See Git-R-Done Prods., Inc. v. Giterdone C Store, LLC*, No. 1:15cv386-LG-RHW, 2017 WL 11681357, *4 (S.D. Miss. Jan. 9, 2017)(finding that because summary judgment was improper on federal trademark infringement claims, summary judgment was also improper on the related federal and state law claims).

C. UNJUST ENRICHMENT

Plaintiff argues that Defendants have knowingly misappropriated Plaintiff's trademark, especially considering that Defendants opened three additional stores after receiving Plaintiff's cease and desist letters in March and April 2022.  Green Rush further argues that Defendants have plans for future expansion, which "indicates their intent to wrongfully take the possession of Plaintiff's mark and use it for their benefit."  [55] at 20.  Defendant argues that, under Mississippi law, this is a restitution-based remedy, rather than a separate cause of action.  *See Tuff-Wall, Inc. v. Sherwin-Williams Co.*, No. 2:13cv99-KS-MTP, 2014 WL 1342976 (S.D. Miss. Apr. 3, 2014)(finding that pleading "unjust enrichment" as a separate cause of action, rather than a remedy,

---

[10] In its complaint, Plaintiff alleges a claim pursuant to Mississippi's trademark statute, Miss. Code Ann. § 75-25-23.

was "imprecise," but "of no consequence" because this is a remedy "in certain circumstances, available under the Lanham Act."). Because the Court has found that summary judgment should be denied at this juncture, it follows that the Court cannot adjudicate any claims for unjust enrichment at this time. Accordingly, summary judgment on this claim is denied.

IV.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Xhale Smoke Shop Defendants have also moved for summary judgment, arguing that there is no likelihood of consumer confusion between XHALE CITY and Xhale Smoke Shop. Repeating their arguments from their response to Plaintiff's Motion for Summary Judgment, they argue that Green Rush is attempting to exclude other smoke and vape shops from using only "xhale," a word that is not capable of trademark protection. They argue that "XHALE CITY" is a weak, suggestive mark entitled only to minimal protection, and that the "digits of confusion" weigh in their favor. Among other things, they point out the lack of evidence of actual consumer confusion, lack of survey evidence, the relative disparity in advertising budgets, and the lack of evidence on the degree of care exercised by consumers. They also argue that summary judgment in their favor is appropriate on Plaintiff's state law claims and the claim of unjust enrichment. Likewise, Plaintiff Green Rush responds with the same arguments it made in its motion for summary judgment, asserting that all the factors in the likelihood of confusion analysis weigh in its favor.

The Court has already denied summary judgment in Plaintiff's favor based on its analysis of the "digits of confusion." For the reasons discussed *supra* in Section III, and considering the evidence submitted by Defendants, the Court is not convinced that the "record compels the conclusion that the movant[s are] entitled to judgment as a matter of law." *See Xtreme Lashes*, 576 F.3d at 227. Because likelihood of confusion is "usually a question of fact, and in this case is

best reserved for a jury," the Court denies Defendants' motion for summary judgment.  *Git-R-Done Prods.*, 2017 WL 11681357 at *3-4 (citation omitted).

V.    <u>CONCLUSION</u>

Accordingly, for the reasons explained above, the Court hereby denies both Plaintiff's and Defendants' motions for summary judgment.  *See* [54], [56].

SO ORDERED AND ADJUDGED, this 8th day of October, 2024.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE